# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBORAH JOHNSON, Individually as the Representative of the Estate of BRUCE JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD ORTON, JR. CERAMIC FOUNDATION, *et al.*,<br><br>Defendants. | Case No. 19-cv-06937<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Johnson alleges that her late husband, Bruce Johnson (Bruce), contracted mesothelioma due to his exposure to asbestos in products produced by the defendants Edward Orton, Jr. Ceramic Foundation and Vanderbilt Minerals, LLC. Johnson brings product liability claims based on negligence against the defendants. Orton has moved for summary judgment. For the reasons given below, Orton's Motion for Summary Judgment [121] is granted. Orton's *Daubert* motions [92, 94, 96, 98, 100] are denied as moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND[1]

Plaintiff Deborah Johnson, who represents herself and the estate of her late husband Bruce, is a citizen of Illinois. DSOF at 1. Defendant Edward Orton, Jr.

---

[1] The facts cited are undisputed unless otherwise noted. Orton's Rule 56.1 Statement of Facts in support of its motion for summary judgment (Dkt. 122) is abbreviated as "DSOF." Johnson's Rule 56.1 Statement of Additional Facts and response to Orton's statement (Dkt. 127) is abbreviated as "PSOF." Orton responded to those statements of fact at Dkt. 129.

Ceramic Foundation is a trust located in Ohio with trustees in Ohio, Kentucky, Maryland, and Florida. *Id*. Defendant Vanderbilt Minerals, LLC is a company organized under Delaware law and headquartered in Connecticut. *Id*.

Between 1971 and 1984, Bruce studied and worked with ceramics for several different companies and schools. *Id*. at ¶ 2. As part of that work, Bruce used pyrometric cones manufactured by Orton. *Id*. at ¶ 6. The cones are used to measure the temperature of the kiln and determine when it is ready for firing. *Id*. Orton packaged the cones in cardboard boxes and used the mineral vermiculite as a packing material. *Id*. The packaging contained no warnings regarding asbestos. PSOF ¶ 8.

When he needed cones, Bruce would pick them out of the cardboard box where they lay in the vermiculite packaging. DSOF § 7. He generally tried to keep the vermiculite in the box, although it sometimes spilled. *Id*. at ¶ 7. He also occasionally poured out the entire contents of the box, including the vermiculite, to save the box for later use. *Id*. at ¶ 8. On March 3, 2017, Bruce was diagnosed with malignant mesothilioma, a disease almost always caused by exposure to asbestos. Dkt. 58, Compl. ¶ 7. He died from the disease on January 6, 2020. Dkt. 58, Compl. ¶ 6.

Prior to 1963, Orton shipped its cones in containers filled with sawdust. DSOF ¶ 11. That year, a shortage of sawdust led Orton to switch to using vermiculite as a filler. *Id*. at ¶¶ 11, 12. Between 1963-75 and 1979-81, Orton purchased vermiculite from a company called W.R. Grace. *Id*. at ¶ 13. From 1975-79 and again from 1982-83, the vermiculite was sourced from a different firm named J.P. Austin. *Id*. In 1983,

3

Orton transitioned to using micro-foam in its packaging due to the dust vermiculite caused in the manufacturing facility. *Id.* at ¶ 14; PSOF ¶ 7.

When Orton was doing business with W.R. Grace, it received shipments of vermiculite from W.R. Grace's facility in Wilder, Kentucky. DSOF ¶ 22. In September 1981, Orton requested a Material Safety Data Sheet (MSDS) from W.R. Grace. *Id.* at ¶ 20. The MSDS stated that the vermiculite Orton was supplied originated from a mine in Libby, Montana and contained small amounts (less than .1% by weight) of asbestos. *Id.* at ¶ 20. Libby has one of the largest vermiculite deposits in the United States and, unlike most deposits, the site also contains asbestos. *Id.* at ¶¶ 15, 26, 19. There is no evidence that J.P. Austin's vermiculite contained any asbestos. *Id.* at ¶ 13 n.4. Despite the contamination of the vermiculite, Orton's pyrometric cones themselves never contained any asbestos. *Id.* at ¶ 9.

Following Bruce's diagnosis, the Johnsons filed suit in state court alleging several defendants exposed him to asbestos, resulting in his mesothilioma. *Id.* at 1. After Johnson settled with the last non-diverse defendant, Orton removed the case to this court. *Id.* It has now moved for summary judgment. Vanderbilt, who produced an unrelated product that allegedly exposed Bruce to asbestos, remains a defendant in the case and has not joined the instant motion.

**ANALYSIS**[2]

**I. Orton Did Not Know of the Risk of Vermiculite**

Johnson alleges that Orton was negligent for failing to warn or protect Bruce from the risk of asbestos in its product. To prove negligence, the plaintiff must establish "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (2006). The first step in evaluating a negligence claim, then, is determining whether the defendant owed a duty to the plaintiff. Because Johnson fails to raise any questions of fact as to the existence of a duty owed by Orton to Bruce, summary judgment is appropriate.

In the product liability context, a manufacturer has a duty to warn potential customers when "the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (2002). It is the second element, Orton's knowledge of the danger, that is at issue in this case. It is an objective inquiry—Orton's duty can be established by showing either that it actually knew of the risk or that a reasonable person in its position would have realized it. *See id.*; *Daniels v. ArvinMeritor, Inc.*,

---

[2] The Court notes with disappointment that both parties' briefs cite directly to the record instead of their Rule 56.1 Statement of Facts. It is well established in this district that briefing should cite to the Rule 56.1 Statements. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664-66 (N.D. Ill. 2015) (collecting numerous cases). When the parties cite directly to the record, they force the Court "to engage in a treasure hunt to discern whether the cited material is disputed." *Id.* at 666. Still, whether to require strict compliance with Local Rule 56.1 is in the Court's discretion. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019). Given the limited facts at issue, the Court undertakes the "treasure hunt."

5

2019 IL App (1st) 190170, ¶ 72. When asking what the defendant should have known, the Court looks to the industry knowledge at the time. *See Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 198 (1980); *McKinney v. Hobart Bros. Co.*, 2018 IL App (4th) 170333, ¶ 59 ("What defendant should have known comes down to what was known in the industry of which defendant was a part.").

In this case, Johnson has not established that Orton knew, or should have known, that: (1) W.R. Grace was supplying vermiculite from Libby; or (2) Libby vermiculite was contaminated with asbestos. In her Response, Statement of Facts, and Reply to Orton's Statement of Facts, Johnson does not provide any citations to the record showing that Orton knew it was getting vermiculite from Libby prior to receiving the MSDS in 1981. A deposition of an Orton employee references a brochure from W.R. Grace's predecessor company listing Libby as one of its two sources, but Orton does not appear to have any records indicating from where *its* vermiculite actually came. Dkt.126-3, Childress Dep. At 182. Instead, according to the record, the extent of Orton's knowledge appears to have been that the vermiculite was shipped from a W.R. Grace processing facility located in Wilder, Kentucky. *Id*. It was only after the receipt of the MSDS in 1981, the same year that Orton stopped buying from Grace, that the record supports the claim that Orton learned its vermiculite came from Libby. DSOF ¶¶ 20, 22. Johnson also does not provide any evidence that Orton should have known the source of the vermiculite. She does not cite evidence that ceramics manufacturers like Orton were familiar with the ultimate source of its packing

materials or that the source of W.R. Grace's vermiculite was well known in the ceramics industry.

Johnson similarly provides no evidence that Orton was, in fact, aware of the presence of asbestos in Libby vermiculite prior to obtaining the MSDS. Instead, Johnson argues that Orton *should* have known of the risk. Johnson only cites to one article, however, that would suggest the ceramic industry's knowledge—a 1940 article published in the Bulletin of the American Ceramic Society entitled "Summary of the Occurrence, Properties, and Uses of Vermiculite at Libby Montana." Dkt. 126-2, Ex. 2 at 4. Among its other findings, the report noted that the site has "a second series of dikes intersecting the ore body [that] consists of material high in amphibole asbestos . . . Where the concentration of asbestos is sufficiently high, it is mined and marketed. The vermiculite is a minor constituent of this zone." *Id.* at 5. Published over twenty years before Orton started using vermiculite for packaging, the article on its own does not suggest that Libby vermiculite is contaminated with asbestos, only that asbestos is located nearby. This is simply insufficient to establish industry knowledge. *McKinney v. Hobart Bros. Co.*, 2018 IL App (4th) 170333, ¶ 72 (stating the plaintiff must supply evidence of contemporaneous industry knowledge of the asbestos risk of the particular product at issue).

To bolster her argument, Johnson also asserts that "vermiculite is a common ingredient in ceramics," implying that industry actors would be familiar with its sources and risks. Dkt. 126, Resp. at 7. The evidence Johnson marshals in support of this proposition, however, actually undermines her argument. She cites an article

entitled "Vermiculite as a Raw Material in Ceramic Manufacture" published in 1943 in the Journal of the American Ceramic Society. That article states that the principal uses of the mineral are as "an aggregate in lightweight concrete or alone as an insulating material." Dkt. 126-6, Ex. 6 at 2. The paper goes on to explore the possible use of vermiculite in plastic clay, prompted by the presence of the mineral near a ceramics plant in Texas. *Id.* Far from proving that vermiculite is commonly used in ceramics, the article actually suggests that the mineral was relatively unknown in the field at the time of publication and was the subject of limited interest. The plaintiff points to nothing in the record suggesting that, by the 60s and 70s, vermiculite had become widely used in the ceramics industry.

Taken in the light most favorable to plaintiff, Johnson has failed to provide persuasive evidence that Orton knew, or should have known, that Grace's vermiculite was sourced from Libby or that Libby vermiculite contained asbestos. The stray articles cited are insufficient to create an issue of fact for the jury. *See White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). Without evidence of Orton's objective knowledge, Johnson cannot show that Orton had a duty to warn Bruce of the danger of the asbestos in the vermiculite packaging. And without a duty, Orton cannot be held negligent. Summary judgment is thus appropriate.

**II. Orton Did Not Manufacture Vermiculite**

Johnson urges the Court to treat Orton as a manufacturer. Manufacturers are "held to the degree of knowledge and skill of experts" in ensuring that its product is reasonably safe. *Anderson v. Hyster Co.*, 385 N.E.2d 690, 692 (1979). Johnson asserts

8

that Orton should be held to the standard of an expert in vermiculite. She cites several contemporaneous documents, including a couple articles in specialist minerology journals and reports by the Montana Bureau of Mines and Geology, that discuss aesbestos in Libby vermiculite. *See* Dkt. 129-1, Ex. 1; Dkt. 129-8, Ex. 8; Dkt. 129-9, Ex. 9; Dkt. 129-10, Ex. 10; Dkt. 129-11, Ex. 11. This evidence suggests that an expert in vermiculite may well have been aware of the risks of the Libby mine and its affiliation with W.R. Grace.

The problem is that, in making this argument, Johnson assumes that vermiculite is part of the "product" that Orton manufactured. That is the only way that Orton can be held to the standard of an expert in the mineral. But Orton contends that it is only a manufacturer of the pyrometric cones. The vermiculite was just filler, over which they had no obligation to expertise beyond that of the ceramics industry generally. The Court agrees.

Neither party provides, and the Court has been unable to find, a definitive definition of a "manufacturer" in Illinois product liability law. But the case law and other authorities suggest that Orton does not qualify. The Illinois Supreme Court has noted that liability falls on manufacturers because "losses should be borne by those 'who have created the risk and reaped the profit by placing the product in the stream of commerce.'" *Peterson v. Lou Bachrodt Chevrolet Co.*, 329 N.E.2d 785, 786 (1975) (quoting *Suvada v. White Motor Co.*, 210 N.E.2d 182, 186 (1965)). The courts have also emphasized the importance of the creative process of the manufacturer, noting that an "assembler of parts" may qualify as a manufacturer so long as they also sold

9

the assembled item. *Hinojasa v. Automatic Elevator Co.*, 416 N.E.2d 45, 47 (Ill. App. 1980). Meanwhile, a company like Amazon that provides a platform for others to sell products but does no assembling itself is clearly not a manufacturer. *See Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766, 782 (N.D. Ill. 2019).

The Restatement (Second) of Torts makes a clear distinction between a manufacturer on the one hand and a seller on the other. A manufacturer of a defective item is "the creator of something which is foreseeably dangerous when it is used for the purpose for which it is manufactured." Restatement (Second) of Torts § 402 cmt. d (Am. L. Inst. 1965). Such a manufacturer is "constructing . . . the chattel defectively." *Id*. A seller's role, meanwhile, is limited to "selling and delivering the chattel." *Id*. The Restatement advises against finding sellers negligent when they unknowingly sell defective products because "[t]he burden on the seller of requiring him to inspect chattels which he reasonably believes to be free from hidden danger outweighs the magnitude of the risk that a particular chattel may be dangerously defective." *Id*. The Restatement emphasizes the manufacturer's creative and constructive role, which in turn create their responsibility for arising dangers. Sellers, meanwhile, are entitled to assume that goods from a "reputable source" are safe for use. *Id*. at cmt. e.

In the instant case, Orton manufactures, markets, and sells pyrometric cones. Vermiculite was never incorporated into the cones. DSOF ¶ 9. Instead, Orton used the mineral as a disposable filler in its packaging, presumably so that the cones were less likely to break before use. DSOF ¶ 10. Vermiculite was not part of the "product" that Orton advertised—its role was filled at other times by sawdust or micro-foam.

10

Orton did not "create" the vermiculite, nor was vermiculite involved in the "construction" of its product, the cones.

One might argue that Orton "assembled" the packages containing the cones, including the vermiculite. But if that were sufficient to turn Orton into a manufacturer of vermiculite, every firm that used packing peanuts, tape, or cardboard boxes would be held to the standard of an expert should some defect with those materials arise later. Johnson has not cited any case law supporting such an expansive view of manufacturer liability. Instead, Orton's role in this case is more analogous to that of a seller of vermiculite who placed reasonable trust in the supplier. The Court agrees with the Restatement that holding sellers to a manufacturer's standard would impose a significant burden that substantially outweighs the usually slight risk. *See* Restatement (Second) of Torts § 402 cmt. d (Am. L. Inst. 1965).

If Orton is not a manufacturer of vermiculite, then it is not expected to have expert knowledge of the mineral. Instead, Orton is held to the standard of knowledge of the ceramics industry. And, as discussed, Johnson has failed to provide meaningful evidence that vermiculite was commonly used in ceramics, let alone that the industry was aware of the Libby deposit's asbestos contamination. The record does not raise any issues of fact as to whether Orton knew or should have known of the risk present in the vermiculite. A jury could not find that Orton had a duty to warn Bruce of the risk of asbestos in the vermiculite. Thus, Orton was not negligent for failing to provide a warning.

## CONCLUSION

For the stated reasons, Orton's Motion for Summary Judgment [121] is granted. Orton's *Daubert* motions [92, 94, 96, 98, 100] are denied as moot. The Clerk is directed to terminate Orton from the case.

E N T E R:

Dated: June 25, 2021

MARY M. ROWLAND
United States District Judge