UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH JOHNSON, Individually as the Representative of the Estate of BRUCE JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD ORTON, JR. CERAMIC FOUNDATION, *et al.*,<br><br>Defendants. | Case No. 19-cv-06937<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Johnson sues Defendant Vanderbilt Minerals, LLC for allegedly causing her deceased husband, Bruce Johnson, to develop fatal mesothelioma after being exposed to asbestos contained in Vanderbilt's materials. Vanderbilt has moved pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude or limit the testimony of Johnson's retained experts. For the reasons explained below, this Court grants Vanderbilt's motion to exclude Dr. Arthur Frank and any testimony based upon the cumulative exposure theory [87]; grants as agreed Vanderbilt's motion to preclude Monona Rossol from offering opinions on causation, dose, or minerology, and to limit her opinions to her area of expertise in ceramics [88]; grants Vanderbilt's motion to limit Dr. Barry Castleman's testimony to a general historical review of asbestos literature [91]; denies Vanderbilt's motion to exclude Dr. William Longo's

1

study and videotape [86]; and denies Vanderbilt's motion to limit Dr. Theresa Emory's testimony to diagnosis of disease [89].

## LEGAL STANDARD

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony. Expert testimony is admissible under Rule 702 if technical or specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." District courts act as gatekeepers and must ensure that expert testimony "is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted). Relevant factors in this determination include testing, peer review, error rates, and acceptance by the relevant expert community. *See Daubert*, 509 U.S. at 593–94. The reliability inquiry is flexible, however, and not all of these factors will apply in every case. *See Kumho*, 526 U.S. at 141.

In assessing the admissibility of expert opinions, courts do not focus on "the ultimate correctness of the expert's conclusions," *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013), but "solely on principles and methodology," *Daubert*, 509 U.S. at 595. The "soundness of the factual underpinnings" and "correctness of the expert's conclusions" may affect any ultimate determination on the merits, but do not govern admissibility. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718–19 (7th Cir. 2000). The expert must explain his or her methodology and cannot "simply assert a bottom line." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Finally, the expert "may be qualified by knowledge,

2

skill, experience, training, or education." *See Smith*, 215 F.3d at 718 (internal quotation marks omitted). District courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009).

## BACKGROUND[1]

Plaintiff Deborah Johnson represents herself and the estate of her late husband Bruce Johnson who, between 1971 and 1984, worked with ceramics for different companies and schools. [132] at 2–3. In March 2017, doctors diagnosed Bruce with malignant mesothelioma, a disease almost always caused by asbestos exposure. *Id.* at 3. Bruce died from the diseased in January 2020. *Id.* Following Bruce's diagnosis, the Johnsons filed suit in state court alleging that several defendants exposed Bruce to asbestos and caused him to develop mesothelioma. *Id.* at 4. After the Johnsons settled with the last non-diverse defendant, defendant Orton removed the case to this Court. *Id.* In June 2021, this Court granted summary judgment in favor of Orton, leaving Vanderbilt as the remaining Defendant. *Id.* at 12. The Johnsons seek to hold Vanderbilt liable under a negligent products liability theory for manufacturing, distributing, or selling asbestos-containing products used in the production of ceramics. [1] ¶ 9.

---

[1] This Court presumes familiarity with the facts of this case, as set forth in detail in this Court's summary judgment opinion. [132]. The background section therefore focuses upon the facts relevant to the pending *Daubert* motions.

3

Vanderbilt has now moved to exclude, in whole or in part, five of Johnson's experts. This Court considers each expert in turn below.

## ANALYSIS

### I.  Dr. Arthur Frank and the Cumulative Exposure Theory

Vanderbilt moves to exclude the opinions of Dr. Arthur Frank and any reference of argument regarding the "cumulative exposure theory." [87].

Dr. Arthur Frank is a professor at Drexel University's School of Public Health. [87-1] at 11. In his expert report, he notes that Bruce experienced a variety of exposures to asbestos from approximately 1970 or 1971 through 1983 and regularly handled products that contained asbestos such as Vanderbilt's NYTAL 100 Talc. *Id*. Bruce also worked with AMACO White Art Clay #25 that contained "large amounts of the NYTAL Talc." *Id*. In addition to Bruce's experiences with Vanderbilt's products, Bruce worked also with Orton pyrometric cones packaged in boxes of vermiculite from the asbestos-contaminated Libby mine in Montana, and maintained brake jobs and one drywall job in the 1970s. *Id*.

Dr. Frank opines, based upon his review of materials provided to him, that Bruce developed a "malignant pleural mesothelioma as a result of his exposures to asbestos from the talc materials that he worked with, the vermiculite that he handled, and his brake work and drywall activities." *Id.* at 11–12. Dr. Frank opines that the "cumulative exposures that he had to asbestos, from any and all products, containing any and all fiber types, would have been contributory," and that "[a]ll of his exposures would have been at levels above background, would have been

4

medically significant, and therefore medically causative of his mesothelioma." *Id.* at 12.

Vanderbilt argues that the Seventh Circuit's opinion in *Krik v. Exxon Mobil Corp.* bars Dr. Frank's causation opinions based upon the cumulative exposure theory in this case. 870 F.3d 669 (7th Cir. 2017). In *Krik*, the plaintiff sued various defendants alleging that they exposed him to asbestos, causing him to develop lung cancer. *Id.* at 671–72. After trial, a jury determined that the plaintiff's usage of cigarettes, not asbestos exposure, was the sole cause of his injury. *Id.* at 672. The plaintiff then appealed, arguing that various pretrial rulings deprived him the right to a fair trial. *Id.* Relevant here, the plaintiff argued that the trial court erred by excluding his causation expert—the same Dr. Arthur Frank retained by the Johnsons in this case. *Id.*

The trial court in Kirk excluded Dr. Frank's causation opinions based upon the "each and every exposure theory," which posits that any exposure to asbestos whatsoever, regardless of the amount or length of exposure, constitutes an underlying cause of injury. *Id.* The court based its ruling upon the requirement under Illinois law that plaintiff demonstrate in an asbestos case that "asbestos was a substantial contributing factor to his injury"; in light of Illinois law, Dr. Frank's "any exposure" theory failed to pass muster under *Daubert* because it did not consider how much asbestos exposure the plaintiff experienced as to each defendant or whether a particular dosage could have been a substantial contributing factor to lung cancer. *Id.* at 674–75 (internal quotation marks and citations omitted). After that ruling, ,

the case was reassigned to for trial and the plaintiff attempted again to admit Dr. Frank's opinions, this time based upon a "cumulative exposure" theory. *Id.* at 675. Under this theory, "every minute of exposure adds to the cumulative exposure and thus becomes a substantial contributing factor." *Id.* at 675. After voir dire at trial, however, the trial court again concluded that the "cumulative exposure" theory rested upon the same faulty principles as the "any exposure" theory because it assumed that every exposure—without regard to dosage—contributes to cause cancer. *Id.* Accordingly the court excluded Dr. Frank from offering his causation opinions based upon the cumulative exposure theory. *Id.*

On appeal, the Seventh Circuit affirmed the rulings across the board and noted that "the principle behind the 'each and every exposure' theory and the cumulative exposure theory is the same—that it is impossible to determine which particular exposure to carcinogens, if any, caused an illness." *Id.* at 677. The trial judges properly excluded Dr. Frank's opinions as unreliable because allowing him to testify on either theory would have improperly shifted the burden to the defendants to disprove causation and nullified the requirements of the substantial factor causation test under Illinois law. *Id.*; *see Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 455 (Ill. 1992) ("Under the 'substantial factor' test, which has been adopted by the Restatement (Second) of Torts, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about.").

6

*Krik* forecloses Dr. Frank's testimony in this case. In his expert report, Dr. Frank broadly opines that "cumulative exposures that [Bruce] had to asbestos, from any and all products, containing any and all fiber types, would have been contributory," and that "All of his exposures would have been at levels above background, would have been medically significant, and therefore medically causative of his mesothelioma." [87-1] at 11–12. Dr. Frank does not consider the lengths of exposures to any particular defendant's product, nor the amount of asbestos contained in any product to which Bruce was exposed. His causation opinions in this case are indistinguishable from the ones the Seventh Circuit found unreliable in *Krik* and thus fail to meet the admissibility standards under Rule 702 and *Daubert*. 870 F.3d at 677.

For these reasons, this Court **GRANTS** Vanderbilt's motion to exclude Dr. Frank and any argument, testimony, or reference to the cumulative exposure theory.

## II. Monona Rossol

Vanderbilt moves to exclude Plaintiff's expert, Monona Rossol, from testifying on causation, dose, or minerology. [88]; *see also* [113]. In response, Johnson concedes that Rossol will not offer any opinions as to causation, dose, or minerology and that she will limit her opinions to her area of expertise—ceramics. [112] at 6. Based on her knowledge of ceramics, she is able to respond to a hypothetical about if talc contained asbestos, whether a ceramic artist would have been exposed to it. However, she may not opine about the impact of any such exposure. This Court therefore

7

**GRANTS AS AGREED** Vanderbilt's motion to preclude Rossol from testifying on causation, dose, or minerology.

### III. Dr. Barry Castleman

Vanderbilt moves to limit Plaintiff's expert Dr. Barry Castleman to his review of historical asbestos literature and to exclude Dr. Castleman from offering opinions regarding Vanderbilt's state of mind, Vanderbilt's knowledge of talc health effects, talc causation, and Vanderbilt's lobbying efforts. [91].

Dr. Castleman works as an environmental consultant. [108-5] at 3. He holds a B.E.S. in Chemical Engineering at Johns Hopkins University, an M.S.E. in Environmental Engineering at Johns Hopkins University, and a Sc.D. at the Johns Hopkins School of Hygiene and Public Health. *Id.* As another district court observed, Dr. Castleman has authored numerous articles and testified at trial in more than 300 asbestos cases throughout the country. *Krik v. Crane Co.*, 71 F. Supp. 3d 784, 787 (N.D. Ill. 2014) (hereinafter *Krik II*). Dr. Castleman also authored a book titled *Asbestos: Medical and Legal Aspects* that provides a historical review of asbestos as a public health problem. *Id.*

In response to Vanderbilt's motion, Johnson agrees she will not be offering Dr. Castleman to opine on specific causation or diagnoses. [108] at 4. Johnson states that she will instead offer Dr. Castleman to testify on the "development of the awareness of the hazards of asbestos in the scientific and technical community." [108] at 7. Courts in this district have allowed Dr. Castleman to testify as to the "state of the art for asbestos (that is, what was known about asbestos and its risks), at least

8

from a historical perspective" because such testimony would assist the trier of fact understand copious literature available during the relevant periods. *Krik II*, 71 F. Supp. at 787 (citing other cases). And Vanderbilt does not object to Dr. Castleman's opinions on the general state of the art for asbestos. *See* [91]. Thus, this Court will allow Dr. Castleman to opine on the state of the art for asbestos and a general historical overview of asbestos literature.

Johnson, however, asserts that Dr. Castleman will go beyond general state of the art testimony and will testify, assuming Vanderbilt's talc contained asbestos, on when Vanderbilt "knew about the dangers of asbestos" and what it did with that knowledge. [108] at 12, 16. On this point, Vanderbilt argues that Dr. Castleman should be precluded from offering any testimony about Vanderbilt's knowledge, mental state, and motives. [91]. This Court agrees. There is nothing in the record suggesting that Dr. Castleman has ever worked for Vanderbilt or that he has any direct knowledge of Vanderbilt's awareness of the risks of asbestos at any given time. Accordingly, Dr. Castleman lacks the foundation to testify about what Vanderbilt knew at any given time regarding asbestos. *See Krik II*, 71 F. Supp. 3d at 788 (precluding Dr. Castleman from testifying "as to what any particular Defendant knew or should have known at any given time regarding asbestos, including but not limited to asbestos' potential hazards, because he lacks direct knowledge regarding what the individual Defendants knew and when they knew it"). Because his testimony would be speculative on this point, any probative value it may have would be significantly outweighed by its prejudicial effect. *See id.*

Similarly, this Court precludes Dr. Castleman from testifying about Vanderbilt's lobbying efforts before Congress. [113] at 3–4. Plaintiff asserts that Dr. Castleman's testimony that Vanderbilt lobbied the government for favorable changes in asbestos laws is relevant to Vanderbilt's awareness of and concealment of the dangers of asbestos in its talc products. [91] at 1, 13, 16. Again, this Court concludes that opinions relating to Vanderbilt's lobbying efforts are improper subjects of expert testimony, as they relate to topics of corporate intent, state of mind, and motives. *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 479 (S.D.N.Y. 2016); *see Sec. & Exch. Comm'n v. Ferrone*, 163 F. Supp. 3d 549, 564 (N.D. Ill. 2016) (precluding expert testimony about a party's state of mind); *accord In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-1509, 2021 WL 2646797, at *5 (S.D. Ohio June 28, 2021) (noting that "knowledge of a corporation is beyond the realm of expert testimony"); *Kruszka v. Novartis Pharms. Corp.*, 28 F. Supp. 3d 920, 931 (D. Minn. 2014) (observing that "the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise") (quotation omitted).

In sum, this Court **GRANTS** Vanderbilt's motion to limit Dr. Castleman's testimony. Based upon the agreement of the parties, this Court precludes Vanderbilt's motion to the extent it requests that Dr. Castleman be precluded from offering any diagnoses or opinions about causation. Additionally, this Court precludes Dr. Castleman from testifying about Vanderbilt's knowledge, mental state,

and motives, including based on its lobbying efforts. Dr. Castleman shall confine his testimony to his general historical review of asbestos literature.

## IV. Dr. William Longo

Vanderbilt moves to exclude Johnson's retained expert Dr. William Longo's talc sampling study and accompanying video. [86]. Dr. Longo obtained a Ph.D. in Materials Science, an M.S. in Engineering and a B.S. in Microbiology, all from the University of Florida. *Krik II*, 71 F. Supp. 3d at 789. He studies the content, type, and release of asbestos fibers from asbestos-containing products. *Id.* In this case, he has performed a videotaped "Talc Pouring Study" using a five-pound bag of Nytal Talc (M34484) powder. [111-5] at 5.

Vanderbilt argues that Dr. Longo's study and video should be excluded because the talc sample Dr. Longo reviewed was not provided by Vanderbilt but by plaintiff's counsel who obtained the sample from a supplier called Ceramic Supply. [86] at 2. Therefore, Vanderbilt contends the sample "was susceptible to contamination or accidental substitution during its handling at Ceramic Supply," and thus Johnson has not sufficiently established a proper chain of custody for the admission of Dr. Longo's study based upon the sample he used. *Id.* at 6; *see also* [111-5] at 10.

Federal Rule of Evidence 901(a) requires a party seeking to admit an item into evidence at trial to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Collins*, 715 F.3d 1032, 1035 (7th Cir. 2013). The Seventh Circuit has instructed, however, that any "gaps in the chain of custody or speculative claims of tampering go to the weight of the

11

evidence rather than its admissibility." *United States v. Dewitt*, 943 F.3d 1092, 1098 (7th Cir. 2019); *see also United States v. Prieto*, 549 F.3d 513, 525 (7th Cir. 2008). In other words, merely "raising the possibility of tampering is not sufficient to render evidence inadmissible; the *possibility* of a break in the chain of custody of evidence goes to the weight of the evidence, not its admissibility." *United States v. Kelly,* 14 F.3d 1169, 1175 (7th Cir. 1994) (emphasis in original).

Here, Vanderbilt offers only the speculative possibility of tampering or accidental substitution. Vanderbilt notes with suspicion that Dr. Longo's sample did not bear Vanderbilt's original packaging or seal, and that it came from a supplier's five-pound bag rather than Vanderbilt's standard fifty-pound bag. [86] at 2. Absent "some affirmative indication" of a mistake, however, Vanderbilt fails to demonstrate that the sample is insufficiently unreliable as to render Dr. Longo's study inadmissible. *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000), *as amended* (Aug. 18, 2000). Certainly, Vanderbilt remains free to introduce evidence casting doubt upon the reliability of the sample Dr. Longo used. That evidence, however, goes to the weight of Dr. Longo's study, not its admissibility. *Dewitt*, 943 F.3d at 1098.

For the above reasons, this Court **DENIES** Vanderbilt's motion to exclude Dr. Longo's study and videotape.

### V.    Dr. Theresa Emory

Vanderbilt moves to preclude Plaintiff's retained expert, Dr. Theresa Emory, from offering opinions regarding talc causation and to limit her testimony to diagnosis of disease. [89].

Dr. Emory works as a clinical pathologist and prepared a report for the Johnsons in 2018, before Bruce died. [89-1] at 7. In her report, Dr. Emory opines to a reasonable degree of medical certainty, that: (1) Bruce developed malignant mesothelioma, epithelioid type; (2) Bruce will die as a result of the mesothelioma and its complications; and (3) based upon his exposure history, Bruce's cumulative asbestos exposures caused him to develop the lethal malignant mesothelioma. [89-1] at 7.

Vanderbilt argues that this Court should preclude Dr. Emory from offering any testimony about talc causation—namely, that Vanderbilt's talc contains asbestos, that Vanderbilt's talc can cause mesothelioma, and that Vanderbilt's talc caused Bruce's mesothelioma in this case. [89] at 1. Vanderbilt argues that these opinions arise from an underlying assumption that Vanderbilt's talc, in fact, contains asbestos, and that Dr. Emory did not derive this assumption from independent testing but rather from information provided by other experts and plaintiff's counsel. *Id.* at 3–6. Vanderbilt emphasizes Dr. Emory testified that she assumed that Vanderbilt's talc contained asbestos by relying upon the expert report of Dr. Longo, another one of Plaintiff's experts. [89-1] at 25.

Contrary to Vanderbilt's argument, Rule 702 permits an expert to assume facts established by other experts. Indeed, "it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Walker v. Soo Line R. Co.*, 208 F.3d

13

581, 588 (7th Cir. 2000) (observing that "courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable"); *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, at *4 (N.D. Ill. May 16, 2017) ("For example, a physician, though not an expert in radiology, may rely on an x-ray in formulating a diagnosis."); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 758 (N.D. Ill. 2009) ("That [an expert] considers information from others in forming his own conclusions does not necessitate the exclusion of his testimony."). Accordingly, Dr. Emory permissibly relied upon conclusions—established by other experts—that Vanderbilt's talc contained asbestos in forming her opinions. This Court will not exclude Dr. Emory's causation opinions on the basis that she assumed, based upon Dr. Longo's study, that Vanderbilt's talc contains asbestos.

For these reasons, this Court **DENIES** Vanderbilt's motion to limit Dr. Emory's testimony.

## CONCLUSION

For the reasons stated above, this Court grants Vanderbilt's motion to exclude Dr. Arthur Frank and any testimony based upon the cumulative exposure theory [87]; grants as agreed Vanderbilt's motion to preclude Monona Rossol from offering opinions on causation, dose, or minerology, and to limit her opinions to her area of expertise in ceramics [88]; grants Vanderbilt's motion to limit Dr. Barry Castleman's testimony to a general historical review of asbestos literature [91]; denies Vanderbilt's motion to exclude Dr. William Longo's study and videotape [86]; and

denies Vanderbilt's motion to limit Dr. Theresa Emory's testimony to diagnosis of disease [89].

Date:
November 23, 2021

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge